United States District Court
Southern District of Texas

**ENTERED**

August 13, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BEVERLY LEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-19-4315 |
| | § | |
| GULF COAST BLOOD CENTER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Beverly Lee sued her former employer, the Gulf Coast Blood Center, claiming violations of the Fair Labor Standards Act. (Docket Entry No. 1). In May 2020, after attempting to reach a settlement, The Blood Center's counsel, R. John Grubb, emailed Lee's counsel, Kalandra Wheeler, stating that The Blood Center accepted Wheeler's proposed resolution of the few remaining issues. (Docket Entry No. 22-1 at 12). Grubb sent Wheeler a draft settlement agreement reflecting those terms, and Wheeler responded with a few changes. (*Id.* at 14, 26). The Blood Center accepted all but one of Wheeler's proposed changes—the extension of the liquidated damages provision to a breach of The Blood Center's neutral-reference obligation. (*Id.* at 37). The Blood Center sent Wheeler a revised version of the settlement agreement, excluding that term. (*Id.*). Wheeler shared the agreement with Lee, but Lee refused to sign. (Docket Entry No. 24-1 at 3). Among other things, Lee refused to sign a release in exchange for the payment The Blood Center agreed to make, despite Wheeler's earlier acceptance of that term. (*Id.* at 5–6).

The Blood Center moved to enforce the settlement agreement and to dismiss Lee's lawsuit with prejudice, arguing that the parties had an agreement. (Docket Entry No. 22). The Blood Center asked for attorney's fees and costs incurred in preparing the motion because, according to

The Blood Center, Lee's refusal to accept the agreement was in bad faith. (*Id.* at 8). Lee responded, arguing that she did not agree to all the terms, so there was no valid settlement agreement to enforce. (Docket Entry No. 24). The Blood Center replied, and the court heard oral argument and evidence in the form of Lee's statements on July 30, 2020. (Docket Entry Nos. 25, 27). During the hearing, The Blood Center agreed to accept liquidated damages for a breach of the neutral-reference provision, as well as all of the other changes Wheeler had proposed on May 19, 2020. (*Id.*).

Based on a careful review of the motion, response, reply, the evidence in the record, and the applicable law, the court grants the motion to enforce the settlement and enters final judgment, dismissing the case with prejudice. The court denies The Blood Center's request for attorney's fees and costs.

The reasons for these rulings are set out below.

## I.    Background

In November 2019, Lee filed this FLSA suit against The Blood Center. (Docket Entry No. 24-1 at 2). The parties mediated on May 4, 2020. (Docket Entry No. 22-1 at 2). The parties narrowed the disputes, but did not resolve others. (*Id.*). Grubb discussed the few remaining issues with Wheeler several times between May 8 and May 11. (*Id.*). These issues included: "(1) the monetary sum to be paid to Plaintiff as part of the settlement in exchange for Plaintiff's release of claims; (2) the potential mutuality of a confidentiality provision and the amount of liquidated damages for breach of the provision; and (3) a provision specifying that The Blood Center had no obligation to rehire Plaintiff in the future." (*Id.*).

Grubb emailed Lee's counsel on May 11, outlining the few remaining issues. (*Id.* at 9). Grubb stated that he understood that Lee was willing to accept the monetary payment in The Blood

Center's agreement, but "in response to [The Blood Center's] request for specifying a confidentiality provision as a material term subject to a liquidated damages provision, . . . [Lee] requested such obligation be mutual and that liquidated damages be set at $500." (*Id.* at 9). Grubb also stated that The Blood Center was unwilling to waive the no-rehire provision and asked Wheeler to redraft this provision in a way that Lee would accept for The Blood Center to review. (*Id.*).

On May 12, Wheeler responded to Grubb's email. (*Id.*). She agreed to: "(1) the mutuality of the confidentiality provision and the amount of liquidated damages for breach of the provision; and (2) a no-rehire provision" were the only two disputed terms. (*Id.* at 3). She asked for The Blood Center to add a neutral-reference provision. (*Id.* at 9). The same day, Wheeler emailed Grubb again, proposing language for the no-rehire provision and communicating Lee's request "that her employment records be changed to reflect resignation instead of termination." (*Id.* at 8). Grubb responded that The Blood Center was willing to add the neutral-reference provision, but it would not accept the language proposed for the no-rehire provision or change Lee's employment records to reflect resignation. (*Id.* at 7). Grubb restated The Blood Center's position that it was "willing to have a mutual obligation with respect to confidentiality and liquidated damages, but requires that the liquidated damages amount be more substantial than $500." (*Id.*). The Blood Center did not specify a specific amount, but suggested that it not be "less than five digits." (*Id.*).

The parties discussed the outstanding issues in telephone calls between May 12 and May 14. (*Id.* at 4). According to Grubb, Wheeler said that:

> (1) Plaintiff was willing to drop her demand for alteration of her employment records if The Blood Center agreed to provide only a neutral reference to potential future employers, and that I describe to her its policy for ensuring the process was followed; (2) Plaintiff offered a $7,500 liquidated damages provision related to the confidentiality of the agreement; and (3) with respect to a no-rehire provision, Plaintiff was willing to accept language that she would not reapply to The Blood

Center but required that if The Blood Center acquire a company she was already working for, it would not terminate her employment.

(*Id.*).  Grubb stated that The Blood Center would agree to those terms.  (*Id.*).  On May 14, Grubb emailed Wheeler, informing her of The Blood Center's acceptance.  (*Id.* at 12).  Grubb drafted a written settlement agreement and emailed it to Wheeler on May 19, 2020.  (*Id.* at 14).

Wheeler responded on the same day with a redlined version of the settlement agreement Grubb had sent.  (*Id.* at 26).  Her changes included language that the mutual liquidated damages provision be extended to impose liquidated damages on The Blood Center if it breached the neutral-reference provision.  (*Id.* at 32).  The original draft of the settlement agreement imposed liquidated damages on The Blood Center only if it breached the confidentiality obligations.  (*Id.* at 21–22).  Wheeler thought that the liquidated damages provision shared "appl[ied] to both [p]arties equally for any breach[,]" and so she proposed the change to protect Lee's interest in obtaining a neutral reference.  (Docket Entry No. 24-1 at 3).

On May 21, Grubb responded with a revised written settlement agreement.  (Docket Entry No. 22-1 at 37).  The Blood Center accepted all of Lee's redlined changes except "for the inclusion in Section 8 (Confidentiality) of the neutral-reference obligation leading to liquidated damages which it had not agreed to."  (*Id.*).  Grubb stated that the settlement agreement was final and ready for execution.  (*Id.*).  Over the next 10 days, Grubb spoke to Wheeler via phone.  (*Id.* at 5).  Wheeler suggested that Lee would not sign the settlement agreement.  (*Id.*).

On June 1, 2020, The Blood Center filed an Opposed Notice of Settlement after Lee refused to notify the court that a settlement had been reached.  (Docket Entry No. 18).  The court issued an order of dismissal and Lee filed an opposed motion to reinstate the case.  (Docket Entry No. 19, 20).  On June 19, 2020, Grubb emailed Wheeler, "offering to tender payment on behalf of The Blood Center in satisfaction of the terms of the settlement."  (Docket Entry No. 22-1 at 5, 49–50).

On June 23, Wheeler responded with a letter stating that after reviewing the terms, Lee refused to be bound by the settlement agreement. (*Id.* at 52–53). Lee never signed any written settlement agreement. (Docket Entry No. 24-1 at 5).

The Blood Center filed a response to Lee's motion to reinstate and a motion to enforce the settlement agreement. (Docket Entry Nos. 21, 22). The court granted the motion to reinstate, Lee responded to The Blood Center's motion to enforce the settlement agreement, and The Blood Center replied. (Docket Entry Nos. 23, 24, 25). The court heard oral argument on The Blood Center's motion and evidence in the form of testimony by the lawyers and by Lee. (Docket Entry No. 27). At the hearing, the Blood Center agreed to accept all the changes Wheeler had proposed to the written settlement agreement. (*Id.*). The result is an enforceable settlement agreement. (*Id.*).

The parties' arguments are discussed in detail below.

## II.    The Legal Standard

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Del Bosque v. AT & T Advert., L.P.*, 441 F. App'x 258, 260 (5th Cir. 2011) (quoting *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)). Under federal law, a settlement agreement is a contract. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992). "The federal law of contracts 'uses the core principles of the common law of contracts that are in force in most states.'" *Lopez v. Kempthorne*, No. CIV.A. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010) (quoting *Smith v. United States*, 328 F.3d 760, 767 n. 8 (5th Cir. 2003) (per curiam)). "A contract requires an offer, acceptance, and a meeting of the minds on all essential terms." *Simon v. Barrett Steel Energy Prods., Inc.*, No. CV H-17-3831, 2018 WL 2010300, at *2 (S.D. Tex. Apr. 30, 2018). "An offer is judged by the parties'

overt acts and words, not by the subjective or secret intent of the offeror." *In re Deepwater Horizon*, 786 F.3d 344, 355 (5th Cir. 2015). An "[a]cceptance of an offer occurs when there is 'manifestation of assent that occurs in any reasonable manner.'" *Simon*, 2018 WL 2010300, at \*2 (quoting *Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at \*2 (N.D. Tex. Nov. 27, 2012)). "A meeting of the minds on all essential terms of a settlement agreement is generally present 'where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims.'" *Id.* (quoting *In re Deepwater Horizon*, 786 F.3d at 357 n.26).

To determine if a settlement agreement is an enforceable contract, "the moving party must prove that the parties reached an agreement regarding all material terms." *Lozano v. Metro. Transit Auth. of Harris Cty.*, No. CV H-14-1297, 2016 WL 3906295, at \*3 (S.D. Tex. July 19, 2016). "If the court finds that an agreement was reached, the non-moving party must prove that the agreement is tainted with invalidity and should not be enforced." *Id.* If the non-moving party challenges the validity, an evidentiary hearing must be held before the court can determine whether to enforce the agreement. *See Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984) ("Although a district court has inherent power to enforce an agreement to settle a case pending before it *summarily,* when opposition to enforcement of the settlement is based not on the merits of the claim but on a challenge to the validity of the agreement itself, the parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement.").

## III. Analysis

### A. The Parties' Arguments

The Blood Center argues that the record shows an offer and acceptance of all material terms, including the monetary sum and release, the confidentiality and liquidated damages

provisions, the neutral-reference provision, the change of employment records, and the no-rehire provisions. (Docket Entry No. 22 at 5–6). According to The Blood Center, the parties "extensively negotiated the material terms of settlement both in mediation and in post-mediation discussions, culminating in a binding agreement manifested through" their phone and email correspondence between May 8, and May 14, 2020. (*Id.* at 1). The Blood Center argues that the settlement formed by this series of discussions became binding as of May 14, 2020, when Grubb emailed Wheeler, informing her of The Blood Center's acceptance of all but one of the redlined changes Wheeler proposed. (*Id.* at 6). The Blood Center argues that "Lee's attempt in her counsel's May 19, 2020 redline of the agreement to add a new term—specifically, the purported addition of a $7,500.00 liquidated damages clause to The Blood Center's neutral-reference obligation in paragraph 8" does not make the agreement invalid "because an agreement as to material terms had already been reached and The Blood Center did not accept the proposed offer of the new term, nor did [Lee] offer any additional consideration." (*Id.* at 7).

Lee argues that "the Parties did not have a meeting of the minds on the material terms of liquidated damages, and Plaintiff did not knowingly and voluntarily agree to the essential terms of waiving rights to any and all claims against Defendant." (Docket Entry No. 24 at 7). First, Lee argues that Texas contract law applies and that under Texas Rule of Civil Procedure 11, the settlement agreement was not valid because it was not signed. (*Id.* at 4). Next, Lee argues that, regardless of whether Texas or federal contract law applies, the parties did not agree to all the material terms. (*Id.* at 4–7). Lee argues that Wheeler's redlined changes on May 19 to the mutual liquidated damages provision were negotiations on how to resolve a material term. (*Id.* at 4–6). Lee asserts there was never a "meeting of the minds" as to this material term because Lee intended the provision to apply to a violation of both the confidentiality and neutral-reference obligations,

while The Blood Center intended the provision to apply only to the confidentiality obligation.  (*Id.* at 4–5).

Finally, Lee argues that she did not "knowingly and voluntarily agree to the essential terms of waiving rights to any and all claims against Defendant."  (*Id.* at 7).  Lee argues that she was not aware of the extent of "the rights she would be giving up" until she "saw the final, proposed agreement . . . [with] provision 1. Definitions (a), which specifically outlined all the claims that would be included in a waiver of claims."  (*Id.* at 6).  While not mentioned in Lee's response, Lee's and Wheeler's declarations also suggest that Lee is arguing that she could not have knowingly and voluntarily entered into the settlement agreement on May 14, 2020, because she was the only one with authority to settle her dispute.  (Docket Entry No. 24-1 at 5).  According to Wheeler, "[t]he attorneys never agreed that their respective clients would not have final settlement authority" and any decisions regarding settlement terms "remained firmly and solely within [Lee's] prerogative." (*Id.* at 2–3).

The Blood Center argues that "Lee never proposed during the parties' negotiations that a liquidated damages clause accompany The Blood Center's neutral-reference obligation, and her attempt to do so after the fact is of no effect."  (Docket Entry No. 25 at 8).  The Blood Center also argues that whether the neutral-reference obligation "was enforceable by a small liquidated damages clause cannot be regarded as a "vitally important ingredient" to the parties' bargain when none of the detailed written communications by either party requested or acknowledged that the obligation would be so enforceable."  (*Id.* at 9).

The Blood Center also argues that Lee's last-minute refusal to release claims in exchange for the settlement does not preclude an enforceable agreement because Wheeler agreed to this, and she is an experienced employment lawyer who knew that a full release of claims is standard in

settlements, including FLSA cases.  (*Id.* at 10).  The Blood Center argues that Wheeler and Lee never indicated any concern with the waiver and release during negotiations, and Wheeler made no edits to this provision in her May 19, 2020, redline.  (*Id.* at 9–10).  Emphasizing that Wheeler did not indicate that "there was any potential dispute over the scope and language of the release," The Blood Center argues that Lee cannot refuse to settle by rejecting a standard provision her lawyer agreed to accept.  (*Id.* at 10).

The Blood Center also responds to Lee's statement in her declaration that no settlement agreement could be reached without her approval.  (*Id.* at 5).  The Blood Center argues that Wheeler had the authority to agree, and did agree, to the settlement "because at no time did Lee's counsel (or Lee herself) ever indicate that she was without authority to negotiate an agreement on Lee's behalf."  (*Id.* at 6).  Instead, Lee's "statements and conduct throughout the negotiation process unambiguously indicated to The Blood Center's counsel that [Wheeler] did have such authority."  (*Id.*).

## B.    Application

Federal contract law governs the enforceability of the settlement agreement because this case involves a federal claim.  *See Bowers v. Abundant Home Health, L.L.C.*, 803 F. App'x 765, 767 n.4 (5th Cir. 2020) (applying federal law to decide if a settlement of a FLSA claim was valid, despite the defendant's argument that Texas law controlled); *Mid-S. Towing*, 733 F.2d at 389 ("Questions regarding the enforceability or validity of [settlement] agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law."); *Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (state law, including Texas Rule of Civil Procedure 11, applies when the court has diversity, not federal question, jurisdiction).

The agreement is enforceable under federal law because the parties agreed to all the material terms and Lee has not demonstrated that the agreement is invalid.  Federal law does not require a written, signed agreement.  *See E.E.O.C. v. Philip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) ("Federal law does not require settlement agreements to be reduced to writing.").  If the parties' communications indicate that an agreement has been reached and there are no material terms outstanding to negotiate, the court can enforce a settlement agreement made orally or by email.  *See Harmon v. Journal Publ'g. Co.*, 476 F. App'x 756, 757 (5th Cir. 2012) ("Under federal law, agreements to settle Title VII claims must be entered into voluntarily and knowingly.  Such settlements are not required to be reduced to writing and oral settlement agreements are enforceable."); *Lozano*, 2016 WL 3906295, at *8 (enforcing settlement agreement when parties expressed an agreement to all material terms in multiple phone calls and emails).  A party who "changes his mind when presented with the settlement documents . . . remains bound by the terms of the agreement" if the parties agreed to all the material terms.  *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981); *see also McGovern v. Enter. Restoration Servs., L.L.C.*, No. CV 19-12525, 2020 WL 2495730, at *3 (E.D. La. May 14, 2020) (enforcing a settlement because the "parties manifested an intent to enter a settlement" by stating that they were "good to go" on the material terms; the fact that "the parties never signed formal settlement document does not allow defendant to renege on the terms that have been agreed upon.").

A material term is one that "the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain."  *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 628 (5th Cir. 1985).  "Whether a term is material or essential is a legal question that the court examines on a case-by-case basis." !*Coe v. Chesapeake Expl., L.L.C.*, 695 F.3d 311, 320 (5th Cir. 2012).  "Courts look not only at any relevant written agreements but also at the relationship of the

parties, their course of dealings, and then answer the field and fact-specific question of whether essential terms were sufficiently settled to find a contract." *APS Capital Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272–73 (5th Cir. 2009).  An agreement on all material terms and no essential terms left to negotiate makes a binding contract. *Id.* at 272.

Here, the parties' conduct demonstrates an agreement to all material terms.  On May 12, 2020, the parties agreed that the only outstanding disputed material terms were the no-rehire provision and the amount and mutuality of the liquidated damages clause for breaching the confidentiality provision.  (Docket Entry No. 22-1 at 9).  Wheeler also asked for the addition of a neutral-reference provision.  (*Id.* at 9).  The parties negotiated both the two outstanding terms and Wheeler's new request by phone and email.  (*Id.* at 3–4, 7–9).  On May 14, 2020, Wheeler made an offer resolving these three outstanding terms.  (*Id.* at 4).  The Blood Center accepted Wheeler's offer.  (*Id.* at 12).

The court finds that the settlement agreement is enforceable because the parties agreed on the material terms.  On May 12, the parties identified the only remaining material terms and came to an agreement on those terms when The Blood Center accepted Wheeler's offer.   "[A]n agreement is not enforceable unless it resolves all essential terms and leaves no material matters open for future negotiation." *APS Capital*, 580 F.3d at 272 (quoting *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1426 (5th Cir. 1995)).  Because The Blood Center has accepted Wheeler's offer, the settlement agreement is binding.  *See Lozano*, 2016 WL 3906295, at *8 (enforcing a settlement agreement when the opposing party could not identify material terms that were left open to future negotiation).

Wheeler's argument that Lee had the right to make a final decision on the settlement after Wheeler had agreed to all the terms is unpersuasive.  (Docket Entry No. 24-1 at 2).  Unless an

attorney explicitly agrees with opposing counsel to allow the attorney's client to have final settlement authority, it is presumed that the attorney has the right to settle on the client's behalf. *See Harmon*, 476 F. App'x at 758 ("While an attorney may not settle a case without express authority, 'an attorney of record is presumed to have authority to compromise and settle litigation of his client.'" (quoting *Mid-S. Towing*, 733 F.2d at 390)); *In re Deepwater Horizon*, 786 F.3d at 355 (a settlement agreement is enforceable without a client's signature "unless the parties explicitly provide that a valid contract will not be formed until the parties execute a formal, finalized agreement."). At argument, Wheeler admitted that there was nothing in the record that demonstrated a prior agreement with Grubb to allow Lee final authority to reject the settlement or insist on a new term after Wheeler and The Blood Center had agreed to the terms.

Nor is the result changed by Lee's last-minute refusal to sign a release waiving her claims. Raising a new concern after an agreement has been reached does not show outstanding material terms. *See Lozano*, 2016 WL 3906295, at *9 ("[T]erms that arise when formalizing the release agreement that played no part in the parties' actual negotiations cannot be considered material."). Wheeler did not raise this issue at any point in the parties' negotiations and she did not modify the provision in the May 19 redlined agreement she sent to Grubb.

The Blood Center has agreed to accept the liquidated damages for the neutral-reference provision, meaning that all the redlined changes proposed by Wheeler on May 19, 2020, are accepted. The parties' conduct unequivocally demonstrates agreement on all terms. The court grants The Blood Center's motion to enforce the settlement agreement and to dismiss the case with prejudice.

The Blood Center's request for its fees and costs for enforcing the settlement is denied. The Blood Center argues that "Lee's baseless refusal to abide by the parties' settlement has

12

needlessly caused The Blood Center to incur attorneys' fees and costs in preparing and filing the instant motion." (Docket Entry No. 22 at 8). The Blood Center asks that the court "permit The Blood Center to submit evidence of these fees and costs so that the Court may make an appropriate award, preferably deducted from the amount that The Blood Center shall pay Lee." (*Id.*). Lee argues that The Blood Center is not entitled to attorney's fees and costs merely because Lee, in good faith, disagreed about "whether an enforceable agreement exists under the law and whether all essential terms have been negotiated[,]" and acted in good faith to try to resolve this disagreement. (Docket Entry No. 24 at 7).

A court may impose attorney's fees "when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). The Fifth Circuit has held "that a party's refusal to abide by [an arbitration] award 'without justification' qualifies as vexatious behavior that can support the award of attorneys' fees by a federal court." *Seals v. Herzing Inc.-New Orleans*, 482 F. App'x 893, 897 (5th Cir. 2012) (affirming attorney's fees incurred opposing the plaintiff's motion to suppress and preparing a motion to enforce the settlement agreement because the motion to suppress was "unsupportable") (quoting *Specialty Healthcare Mgmt., Inc. v. St. Mary Par. Hosp.*, 220 F.3d 650, 658 (5th Cir. 2000).

Lee addressed The Blood Center's arguments and provided some evidence supporting her position that the settlement agreement was unenforceable. This behavior is not consistent with the bad faith required to award attorney's fees and costs. *See Procaccino v. Jeansonne*, No. CV 17-4748, 2017 WL 6733722, at *5 (E.D. La. Dec. 29, 2017) (advancing a colorless defense in opposing the plaintiff's motion to enforce a settlement agreement in an effort to multiply proceedings or harass the plaintiff "constitute[d] bad faith that is grounds for an award of attorney's

13

fees as a sanction."). The court denies The Blood Center's request to submit evidence of attorney's fees and costs incurred while preparing the motion to enforce the settlement agreement because Lee's "refusal to execute settlement documents and dismiss her action" appear to have been "done with a genuine and reasonable belief that no agreement ha[d] been reached." (*Id.*).

## IV.    Conclusion

The Blood Center's motion to enforce the settlement agreement and to dismiss the lawsuit with prejudice, (Docket Entry No. 22), is granted. The Blood Center's request to submit evidence on its attorney's fees and costs, (Docket Entry No. 22), is denied.

SIGNED on August 13, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge